UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KRISHNA PATEL, VIJAY PATEL, and )
ACTAX SOLUTIONS, INC., )
)
     Plaintiffs, )
)
v. ) No. 3:13-0701
) Judge Sharp
TERRELL D. HUGHES, JR., and TRX )
SOFTWARE )
DEVELOPMENT, INC. , )
)
     Defendants. )

## MEMORANDUM

Pending before the Court in this copyright infringement action is the fully briefed Motion to Dismiss filed by Defendants Terrell D. Hughes, Jr., and TRX Software Development, Inc. (Docket No. 15). After setting forth the applicable standard of review, the Court will consider the parties' arguments in the order presented by Defendants.

## I. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As further explained in Twombly,

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology,

1

Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. at 555. "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

## II. CLAIMS AGAINST MR. HUGHES

Defendants argue that the complaint as to Mr. Hughes should be dismissed in its entirety because none of the claims assert that he committed any wrongdoing and, even if they did, there is no allegation that Mr. Hughes is the alter ego of Defendant TRX. In response, Plaintiffs argue that "[t]he complaint sets forth myriad fact alleging that Doug Hughes participated in the tortious acts against Plaintiffs," and "pleading a cause of action to pierce the corporate veil is unnecessary at this stage in the litigation[.]" (Docket No. 19 at 3).

Defendants are correct that Mr. Hughes is not specifically named in any of the seven counts of the Complaint. In fact, all of the counts reference only TRX – they do not even reference Defendant*s* in the plural.

However, the Complaint does allege that Mr. Hughes "is the founder, owner, chief executive officer, president, and registered agent for TRX," and that he and TRX also operate or control various other entities. (Complaint, Docket No. 1 ¶¶ 5 & 6). The Complaint also contains a host of allegations against Mr. Hughes, including, but not limited to, that he:

(1) met with Plaintiff Vijay Patel "and discussed using Mr. Hughes's company to market and sell or license copies of SalestaxExact, AccountExact, and TaxExact in

2

the United States on behalf of AcTax Solutions";

(2) "signed a 'Product Distribution Agreement' to sell private label versions of AccountExact and ClientExact under the TRX name";

(3) negotiated with others "for the sale of various software products including TaxExact to TRX";

(4) sent a Letter of Intent "to AcTax Solutions on behalf of TRX regarding the sale of TaxExact to TRX";

(5) signed a Software Maintenance Agreement for Tax Exact that "specified payment of $20,000 per month to AcTax Solutions for updating TaxExact for new software versions and tax code changes" and demanded that Mr. Patel sign it the day it was presented;

(6) was required "to pay $30,000 per month for eight years to purchase TaxExact in conjunction with the Software Maintenance Agreement" and "understood that signing both the Software Maintenance Agreement and the Asset Purchase Agreement was needed in order to complete the transaction so that AcTax Solutions could draw on the full payment of $50,000 per month to get the software updated";

(7) sent a "binding 'Letter of Intent' to AcTax Solutions reaffirming his desire to buy TaxExact on behalf of TRX";

(8) explained to AcTax Solutions "that he could not pay the $30,000 per month according to the proposed terms Asset Purchase Agreement," and claimed "the Software Maintenance Agreement was unenforceable without the accompanying Asset Purchase Agreement";

(9) "announced that he was changing the payment plan" and "instead of paying $30,000 per month to AcTax Solutions for the next eight years, he would pay $3,500 minimum per month for the next eight years, with the difference to be paid each year on June 15";

(10) "demanded that I-Link transfer control of the domains taxexact.com and taxexactpro.com TRX and announced that he would no longer pay any money to Vijay Patel"; and

(11) "sent AcTax Solutions a proposed second draft of the Asset Purchase Agreement" that "reflected the terms previously declared by Doug Hughes, unilaterally reducing the monthly payment from $30,000 per month to $3,500 per month."

(Id. ¶¶ 23-25, 29-31, 33-36, 38 & 40).

Presumably, the acts attributed to Mr. Hughes were done on behalf of TRX and "[it] follows that a corporate director, officer or employee, if acting within the scope of their authority for the interests of the corporation should not be held liable because their action is treated as that of the corporation." Rennell v. Through the Green, 2008 WL 695874, at * 8 (Tenn. Ct. App. Mar. 14, 2008) (citing Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 789 (Tenn. 2006)). However, a "corporation's separate identity may be disregarded or 'pierced' . . . upon a showing that it is a sham or a dummy or where necessary to accomplish justice." Oceanics Sch., Inc. v. Barbpour, 112 S.W.3d 134, 140 (Tenn. Ct. App. 2003). "When piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a related entity, such as . . . a controlling shareholder, where the two entities are in fact identical or indistinguishable[.]" Pamperin v. Streamline Mfg., Inc. 276 S.W.3d 428, 438 (Tenn. Ct. App. 2008). "'Furthermore, an alter ego claim is not by itself a cause of action. Rather, it is a doctrine which fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own business, and such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation.'" Regions Bank v. JP Realty Partners, Ltd., 912 F. Supp.2d 604, 616 (M.D. Tenn. 2012) (quoting In re RCS Eng'g Prod. Co., Inc., 102 F.3d 223, 226 (6th Cir. 1996)).

In their reply brief, Defendants acknowledge that a claim for alter ego liability need not be pled as a stand-alone count, but argue that Plaintiffs have failed to demand the veil be pierced and "have pointed to no facts demonstrating" the corporate veil should be pierced. Instead, Plaintiffs allegedly "focus[] on Mr. Hughes actions in this capacity as an agent of TRX." (Docket No. 20 at

8).  They also quote Oceanic Schools in both their opening and reply brief for the proposition that "[t]he party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief." Oceanics Sch., 112 S.W.4d at 140.

No doubt, the circumstances under which a corporate veil will be pierced are "rare," Pamperin, 276 S.W.3d at 436, and "[t]o pierce the corporate veil . . the plaintiff must show that a shareholder exercised complete control over a subsidiary and used that control to commit fraud or a wrong," Cambio, 213 S.W.3d at 790.  But the time for "making that showing," or "presenting fact demonstrating" entitlement to that relief, is not at the pleading stage.

That said, Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  This requirement is "intended to give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quoting Conley, 355 U.S. at 47).

As the Complaint is presently drafted, and notwithstanding the numerous allegations against Mr. Hughes, there is no *claim* against him and no suggestion as to the grounds for holding him liable.  In fact, in their response brief, Plaintiff acknowledge that they "have not yet sought to pierce the corporate veil," but "explicitly reserve their right to do so, either by subsequent motion or by amending the pleadings."  (Docket No. 19 at 4 n.5).  While that may be possible in theory, in practice there are no claims against Mr. Hughes that he must defend.

The Motion to Dismiss as to Mr. Hughes will be granted.  However, because Plaintiff request leave in their response brief to amend their Complaint if necessary, and because "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiffs will be afforded an opportunity to file an Amended Complaint to allege actual claims against Mr. Hughes.

5

## III. STANDING FOR COPYRIGHT INFRINGEMENT CLAIM

Under the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 15 U.S.C. § 501(b). "A claim of copyright infringement requires proof of '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc., 402 F.3d 700, 705 (6th Cir. 2005) (quoting, Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

Defendants argue that Mrs. Krishna Patel owns the copyright at issue in this case, and she is the only Plaintiff who has standing to bring that claim. In response, Plaintiffs argue:

> Notwithstanding the fact that the copyright registration identifies AcTax as the author of record, and both Vijay and AcTax are named contacts for rights and permissions to the copyright as reflected on the copyright registration (Dkt. # 1-13), Defendants' assertion of lack of standing reinforces the fact that Krishna Patel's (the copyright owner) infringement claim should not be dismissed because Defendants concede that one of the named plaintiffs owns the copyright. Plaintiffs deny that Vijay Patel and AcTax do not have standing to assert copyright infringement. Additionally, Vijay Patel and AcTax assert tort claims against Defendants.

(Docket No. 16 at 6).

"The party seeking to invoke federal jurisdiction bears the burden to demonstrate standing and he 'must plead its components with specificity.'" Daubenmire v. City of Columbus, 507 F.3d 383, 388 (6th Cir. 2007) (quoting Coyne v. Am. Tobacco Co., 183 F.3d 488, 494 (6th Cir.1999)). Here, the Complaint alleges that "[a]ll of the ownership rights and copyrights in TaxExact, AccountExact, ClientExact, and SalestaxExact developed by AcTax InfoTech vested in Krishna Patel." (Docket No. 1, Complaint ¶ 13). That allegation references Exhibit 6, a letter attached to the Complaint in which Mr. Patel states that "all rights, title and interest subsisting throughout the world

6

including copyright" with regard to the "computer software and/or software source codes pertaining to the products Taxexact, Taxexact-pro, Accountexact, Clientexact and SalesTax, developed by [AcTax]" belong to Mrs. Patel "in perpetuity." (Docket No. 1-8 at 2). The Complaint also alleges that "Krishna Patel owns the U.S. copyright to the source code for Tax Exact as it existed in 2007." (Docket No. 1, Complaint ¶ 19). That allegation references Exhibit 11, which appears to be a printout from the United States Copyright Office that indicates the TaxExact copyright was transferred to Mrs. Patel. (Docket No. 1-1 at 2-3).

The allegations in the Complaint and the exhibits attached thereto all point to Mrs. Patel as the copyright owner of the source code in question. Although AcTax as the author may have initially owned the copyright, "[t]he ownership of a copyright may be transferred in whole or in part by any means of conveyance . . .". 17 U.S.C. § 201(d)(1). Further, although Plaintiffs have the burden to establish standing, they wholly fail to explain how being named as contacts for rights and permissions amounts to an ownership of a copyright.

Accordingly, Defendants' Motion to Dismiss will be granted insofar as they claim that Plaintiff Vijay Patel and AcTax Solutions lack standing to pursue a copyright claim.

## IV. COPYRIGHT PREEMPTION AND COUNTS II-V

In Counts II through V of the Complaint, Plaintiffs bring claims for common law conversion, violations of the Tennessee Consumer Protection Act ("TCPA"), and unjust enrichment. Defendants seek dismissal of those claims, asserting that the rights asserted therein are legally equivalent to the exclusive rights provided by § 106 of the Copyright Act and are, therefore, preempted. In so arguing, Defendants write:

> Section 301 of the Copyright Act "broadly preempts state law claims, and federal law vests exclusive jurisdiction over such preempted copyright claims in the

7

> federal courts." Ritchie v. Williams, 395 F.3d 283, 285 (6th Cir. 2005). Section 301 explicitly states that, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106 in works of authorship that . . . come within the subject matter of copyright . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a) (emphasis added).
>
> As the Sixth Circuit has explained: "The Copyright Act is unusually broad in its assertion of federal authority. Rather than sharing jurisdiction with the state courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law 'within the general scope of copyright' into federal law to be uniformly applied throughout the nation." Ritchie, 395 F.3d at 286. Further, the "subject matter of copyright is broader than the scope of its protection." Stromback v. New Line Cinema, 384 F.3d 283, 300-01 (6th Cir. 2004).
>
> \*        \*        \*
>
> When determining whether a particular claim is preempted under 17 U.S.C. § 301, a court must examine two factors. First, does the work come within the scope of "the subject matter of copyright" as set forth in Section 102 and 103 of the Copyright Act? See Stromback, 384 F.3d at 300. Second, are the rights granted under the asserted state law claim equivalent to any of the exclusive rights within the scope of federal copyright protection? See id.

(Docket No. 16 at 7-8). Defendants then go on to discuss the subject matter and equivalency requirements, and raise specific arguments as to why each of Counts II through V are preempted.

In response, Plaintiffs agree to "withdraw the claims made in Counts II through V" insofar as they are brought by Mrs. Patel. (Docket No. 19 at 10). As to Mr. Patel and AcTax, Plaintiffs assume for the sake of argument that neither can assert any rights in the copyright, but argue that their state-law claims are not preempted:

> By asserting the state law torts in Counts II-V, Vijay and AcTax are asserting their rights as beneficiaries of the property, especially the lost monthly rate and royalty payments. (Dkt. # 1, ¶¶ 63, 69, 74, 79, 80.) Even though they may not own the copyrighted material, their license to use it and benefit from it gives them grounds to assert their state law claims beyond the scope of copyright law. Thus, Defendants' assertion boils down to this: Vijay and AcTax are both prevented from pleading

8

> copyright infringement and are barred from any remedy to the torts committed against them. This de facto bar of claims does not comport with the statute, and thus the pre-emption doctrine does not apply to Vijay or AcTax. Since Defendants did not assert that Vijay or AcTax failed to state a claim, their claims in Counts II through V should remain as tort claims arising from Defendants' acts against Vijay and AcTax.

(Docket No. 19 at 10).

Plaintiffs' half-hearted argument, devoid of legal authority to support their position, is unhelpful. Stripped to its essence, their argument is that because Mr. Patel and AcTax do not own the copyright, the state law claims for conversion, unjust enrichment, and violations of the TCPA are not preempted.

Section 301 of the Copyright Act contains a preemption provision that states as follows:

> (a) *all legal or equitable rights* that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether . . . published or unpublished, are governed exclusively by this title. Thereafter, *no person is entitled to any such right or equivalent right* in any such work under the common law or statutes of any State.

17 U.S.C. § 301 (emphasis added). "Congress explained what the statute made obvious: '[t]he intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works, within the scope of the Federal copyright law." Laws v. Sony Music Ent., Inc., 448 F.3d 1134, 1137 (9th Cir. 2006) (quoting H.R. Rep. No. 94–1476 at 130 (1976)). "State laws may also be impliedly preempted by the Copyright Act if they create rights that could be violated by the exercise of one of the five "exclusive [federal] rights" granted to copyright owners—reproduction, derivation, distribution, public performance, and public display, see 17 U.S.C. § 106—or if they otherwise undermine the Copyright Act's fundamental purpose of providing a uniform system for protecting original expression for the benefit

9

of society at large." Landham v. Lewis Galoob Toys, Inc. 227 F.3d 619, 623 (6th Cir. 2000).

By effectively conceding Mrs. Patel's ability to pursue Count II through V, Plaintiffs seek to use Mr. Patel and Am Tax to do what Mrs. Patel cannot do directly – avoid possible preemption because they are not the copyright owners. But, in keeping with the Act's intent to "prevent and abolish any rights under the common law" that parallel the copyright laws, the statute states that "no person is entitled" to pursue state law claims that are the equivalent of copyright claims. Allowing Mr. Patel and AcTax to pursue claims which may be preempted runs afoul of the "fundamental purpose of providing a uniform system" that protects original works. See Jules Jordan Video, Inc. v. 144942 Canada, Inc., 617 F.3d 1145, 1154-55 (9th Cir. 2010) ("Whether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright . . . . If a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired"); Somerson v. McMahon, 956 F. Supp.2d 1345, 1356 (N.S. Ga. 2012) (For purposes of preemption, "proof of copyright ownership is not necessary because copyright preemption applies to works that are within the subject matter of copyright," and "[t]herefore, the Court may properly find that plaintiff's state law claim for a violation of his right to publicity is preempted without requiring WWE to prove that it owns the copyrights to the video recording").

Turning to the specific claims, and in the absence of any arguments to the contrary, the Court will dismiss Counts II through V because they are preempted by the Copyright Act.

Count II is a claim for conversion. Conversion is "an appropriation of another tangible property to one's use and benefit," White . Empire Exp., Inc., 395 S.W.3d 696, 720 (Tenn. Ct. App.

2012), and "a conversion claim will usually survive preemption." Stromback, 384 F.3d at 305. However, "an action for the conversion of intangible personal property is not recognized in Tennessee," and where "a claim centers on an intangible right [in property] . . . as opposed to an allegedly unlawful retention" of that property, "it is preempted." Wells v. Chattanooga Bakery, Inc. 2014 WL 1259153, at *7 (Tenn. Ct. App. Mar. 25, 2014).

Here, Plaintiffs' conversion claim centers on TRX's use and sale of their "source code and software" – they do not seek the return of personal property. The Court finds their conversion claim preempted. See WJ Global LLC v. Farrell, 941 F. Supp.2d 688, 693 (E.D.N.C. 2013) ("a conversion claim will be preempted by the Copyright Act if the plaintiff has alleged only the unlawful retention of intellectual property rights and not the unlawful retention of a tangible object embodying the work" and, thus, plaintiff's conversion claim was preempted where it related to the copying of source codes and software); Merchant Transaction Sys., Inc. v. Nelcela, Inc., 2007 WL 723001, at * 19 (D. Ar. July 28, 2009) (where conversion claim was focused on reproduction, copying and misuse of software and did "not allege the conversion of tangible property such as disks [and] files," conversion claims was preempted); Tegg Corp. v. Beckstorm Elec. Corp., 650 F. Supp.2d 413, 434 (E. D. Pa. 2008) (where plaintiff filed conversion claim and sought "to protect its copyrighted software and databases, recover for their unauthorized distribution and reproduction, and enforce its right to control the use of such property," claim was "functionally equivalent" to copyright claim and preempted); Vigilante.com, Inc. v. Argus Test.com, Inc., 2005 WL 2218405, at * 15 (D. Or. Sept. 26, 2005) ("allegation that defendants exercised dominion and control over [plaintiff's] software by downloading the source code does not qualify as an extra element to avoid Copyright . . . preemption.").

11

For much the same reason, Plaintiffs' unjust enrichment claim as pled in Count V is also preempted. The Copyright Act preempts unjust enrichment claims to they extent that they "fall within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102 [&] 103" and where the "claim depends on nothing more than the unauthorized use" of the material. Tastefully Simple, Inc. v. Two Sisters Gourmet, LLC, 134 F. App'x 1, 4 (6th Cir. 2005).

Here, Plaintiffs allege that "TRX is liable for unjust enrichment and quantum meruit under Tennessee common law because it accepted the benefits of Plaintiffs' software and/or program without paying an appropriate price for the software and/or program." (Docket No. 1, Complaint ¶ 76). This claims is preempted.

Plaintiffs' claims under the TCPA are also preempted. In Count III for deceptive trade practices, Plaintiffs allege that "TRX has sold the TaxExact software and/or program to customers . . . under the presumption that TRX was acting on a license or with other legal rights to sell the software[.]" (Id. ¶ 67). In Count IV for unfair competition, Plaintiffs allege Defendants "sold the software and/or program" without permission, "or items alleged to be Plaintiff's software and/or program using Plaintiff's trade names, symbols, or designs for the products," and have done so "to deceive unwitting customers into paying bargain prices for what they believed was a respected product[.]" (Id. ¶¶ 71-73). However, TCPA claims that allege "Defendant created confusion as to the source of the ideas and techniques that were produced" and that "lead consumers to believe these were Defendant's ideas and work," are "precisely equivalent to the rights" protected under the Copyright Act. Hamlin v. Trans-Dapt of Cal., Inc., 584 F. Supp. 2d 1050 1061 (M.D. Tenn. 2008); see also R.W. Beck, Inc. v. E3 Consul., LLC, 577 F.3d 1133, 1149 (10th Cir. 2009) ("state law claims that rely on the misappropriation branch of unfair competition are preempted" and deceptive

trade practices claims may also be preempted); Fergon Architects LLC v. Oakley Home Builders, Inc., 2014 WL 340035, at *4 (N.D. Ill. Jan. 30, 2014) (even though a state law claim under the Illinois Uniform Deceptive Trade Practices Act . . . incorporates the additional element of "confusion to the consumer," that element does not make it qualitatively different from a claim of copyright infringement").

Accordingly, Plaintiffs' state law claims for conversion, unjust enrichment, and violations of the TCPA as set forth in Counts II through V will be dismissed.

## V.  COPYRIGHT INFRINGEMENT

Defendants move to dismiss the copyright claim, arguing that the Complaint fails to state a claim because

> it fails to include sufficient facts to support the legal conclusion that "TRX has infringed and continues to infringe the copyrights belonging to Plaintiffs." See Compl. at ¶ 55. The only facts supporting the claim of copyright infringement contained in the Complaint are found in paragraphs 48-51. The Complaint alleges that Ms. Patel obtained a copy of the source code that I-Link allegedly was using to build TRX's software, and that it included a number of source code files that "contain calls to modules named within variations of [Ms. Patel's 2007] version of TaxExact." Id. at ¶ 48. There is no allegation in the Complaint that Ms. Patel ever obtained access to TRX's source code, no allegation that Plaintiffs have reviewed TRX's source code, and no allegation that TRX ever used the I-Link version that she examined. Instead, the Complaint asks the reader to jump to the unsupported position that TRX therefore infringed Ms. Patel's code.

(Docket No. 16 at 14). Moreover, Defendants argue, "even if the Court were to overlook the failure of Plaintiffs to connect the dots between Ms. Patel reviewing I-Link's code and their assertion that TRX therefore committed copyright infringement, the Complaint fails to identify which elements of Ms. Patel's software are original, which elements TRX allegedly copied [and] also fails to identify the specific version I-Link allegedly infringed." Id at 15.

Connecting the dots may not be as difficult as Defendants claim because the Complaint

13

contains two screenshots, the first of which purports to capture "AcTax Solutions' original copyrighted source code," and the second of which purports to capture "TRX's copied version," *both* of which are prefaced with the notice: "Copyright (C) 1996 Actax Infotech Pvt. Ltd." (Docket No. 1, Complaint ¶ 50). Moreover, the Complaint alleges that, after Plaintiffs filed a complaint about I-Link with the local police in Ahmedabad, India, police confiscated workstations and servers and returned them to Plaintiffs, that Mrs. Patel thereby "obtained a copy of the source code being used to provide copied versions of TaxEact to TRX" which showed copying, and that Plaintiffs were informed by investigating officers that I-Link "employees had been instructed to continue updating and rebranding TaxExact and providing access to the software to TRX for sale to U.S. customers by TRX." (Id. ¶¶ 44-48).

Of course, these are nothing but allegations, but they are accepted as true for present purposes and are sufficient to make the copyright claim plausible. Mrs. Patel's copyright claim is all the more plausible when one considered that "[w]here there is no direct evidence of copying, a plaintiff may 'establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" Jones v. Bilge, 558 F.3d 485, 490-91 (6th Cir. 2009) (quoting Ellis v. Diffie, 177 F.3d 503, 506 (6th Cir.1999)). Accordingly, her copyright claim will not be dismissed.

## VI.

On the basis of the foregoing, the Court will enter an Order that grants in part and denies in part Defendants' Motion to Dismiss.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE